IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA,

v.  CASE NO. 2:13-cr-00225-01

JAMES GREGORY GLICK,

DEFENDANT.

## DEFENDANT'S SENTENCING MEMORANDUM
## AND REQUEST FOR VARIANCE

Defendant, James Gregory Glick, by counsel, submits this sentencing memorandum and requests the Court to impose a variance sentence below the United States Sentencing Guidelines range. In this case, the Sentencing Guidelines advise a minimum sentence of 87 months. The law requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply with" the statutory purposes of federal sentencing. 18 U.S.C. §3553(a).

**The kind of sentences available and the sentencing range. 18 U.S.C. §3553(a)(4):** The guideline sentencing range is 87 to 108 months prison and a term of supervised release of one to three years. The Sentencing Guidelines are one of the statutory factors the Court must consider. The Court may also vary from the guidelines and impose a prison sentence of less than 87 months. See generally, *Rita v. United States,* 551 US 338 (2007); *United States v. Diosdada-Star,* 630 F.3d. 359 (4th Cir.2011); *United States v. Ford,* 500 Fed. Appx. 248, 252-253 (4th Cir.2012)(*per curiam*). Defendant currently faces a mandatory minimum sentence of 60 months.

**The nature and circumstances of the offense.  18 U.S.C. §3553(a)(1):** Mr. Glick has pled guilty to serious offenses, knowing he faces seven or more years in prison, years of supervised release, forfeiture and restitution. He fully understands the gravity of his crimes, and has accepted responsibility therefore.

**History and personal characteristics.  18 U.S.C. §3553(a)(1):** Mr. Glick is 44 years of age and a lifelong resident of West Virginia.  He grew up in a family of middle class means.  He graduated from Logan High School in 1987, and attended West Virginia University for two years, from 1987 to 1989, leaving school to assist his ill father in running the family businesses. He worked during high school and since. Although his wife, Angel Glick, recently filed for divorce, he has been married for nearly 18 years, and he and Angel remain on good terms. He is a devoted father to his two children, Alyx, age 13, and Jaron, age 9. Alyx suffers from Crohns disease.

Mr. Glick has contributed to his community in many ways: he has been active in civic, charitable and youth activities. He served a term on the Logan city council. He has invested thousands of hours in coaching. As many of the letters written in support of him demonstrate, he has personally helped other individuals when he saw them in need. The letters show a man who is, at his core, kind and compassionate.

Mr. Glick's criminal history is category one, even though his record is blemished by three prior arrests.  Two of these charges were dismissed and one resulted in a not guilty verdict.  All arrests have been expunged. Prior to the instant charges, Mr. Glick has had no serious charges and never a conviction.

Mr. Glick suffers from chronic ulcerative colitis, and his colon has been removed, which requires him to use the bathroom frequently, and he must take anti-diarrheal medication.  This condition affects his life every day and every night and will make

2

substantial time in prison more punitive than otherwise. He periodically suffers from painful kidney stones. Due to these physical ailments, Mr. Glick will experience an enhanced level of punishment while serving his sentence.

Mr. Glick does not pose a significant risk for recidivism.[1] He will be over 50 years of age (or more, depending on the sentence) when released from incarceration, and in his mid- to late 50s when off supervision. He has the strongest of community ties and family support. He has two years of college, many years of practical business and management experience, and the knowledge and skills necessary to resume life as a contributing member of society.

As Mr. Glick reported to the Probation Officer, he has encountered problems with alcohol, prescription medications and gambling. These are problems and challenges that Mr. Glick can address, and which he hopes to resolve, during his time in prison.

**Purposes of punishment. 18 U.S.C. §3553(a)(2):** The statute directs the Court to impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in §3553(a)(2): to reflect the seriousness of the offense; to provide general and specific deterrence; and to provide defendant needed educational and vocational training, medical care or other correctional treatment.

Five years prison will amply serve all of these purposes. Five years is a meaningful punishment, especially combined with the forfeiture of his property and restitution obligation he must fulfill.

**The need to provide restitution. 18 U.S.C. §3553(a)(7):** Mr. Glick has agreed to

---

[1] *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004); www.ussc.gov/publicat/Recidivism_General.pdf; *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score* (Jan. 4, 2005); www.ussc.gov/publicat/RecidivismSalientFactor.com.

3

pay $1,013,900 in restitution. He has agreed to the forfeiture of cash and additional property. The goal of full restitution will be enhanced if Mr. Glick can return to work at age 50 rather than at a later age.

**The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §3553(a)(6):** This Court will not be called upon to sentence either Jamil Allie or Mike Allie because the government has chosen not to prosecute them.[2] Yet the PSR establishes the fact that the Allies are guilty of arson and insurance fraud; that Jamil Allie is at least as culpable as Mr. Glick; and that Mike Allie was instrumental to the entire scheme, as shown in the following: Jamil bought the building and approached defendant with a plan to sell him the building, insure it, burn it, and equally split the insurance proceeds. PSR ¶25.[3] Jamil and defendant then "worked with" Mr. Thompson to prepare a false and fraudulent commercial insurance application. In particular, the insurance coverage was increased from $600,000 to $1,000,000 based on replacement cost estimates provided by Jamil Allie. PSR ¶28. Jamil recorded his deed to defendant on January 11, 2012, a day after the false insurance application was faxed to the insurance company. PSR ¶¶31-32. However, no money was paid by Glick to Jamil Allie at the time the deed was recorded but, rather, Allie was paid out of the insurance proceeds. PSR ¶33. Jamil concurred in defendant's planned alibi. PSR ¶36. Jamil and his brother Mike arranged to have the building burned. PSR ¶39. Mike recruited the drug dealer Guy Miller, who "[a]ccording to the government...had previously

---

[2] There is no indication that the Allies will be prosecuted by state authorities.

[3] Defendant believes Jamil Allie brought him into the scheme only because Jamil could not obtain commercial insurance coverage for the building necessary to successfully carry out the fraud. See PSR fn. 3.

participated in committing arson with the Allie brothers." PSR ¶¶39-40. Jamil provided a key to the building to Miller, and left the back door unlocked. PSR ¶43, 45. Miller arranged with the Allies to have three five gallon cans of gasoline placed in the building, and a fourth can purchased. PSR ¶45. By the time the United States executed its search warrant, the Allies had received cash payments totaling $285,000 from Mr. Glick, which required defendant to structure transactions to generate cash for the payments. Because Mr. Glick and Jamil Allie agreed to evenly split the insurance proceeds, additional payments were still due. PSR fn. 3, ¶68. In setting forth the above, Mr. Glick is not in any way minimizing his conduct – he was a willing participant in the entire scheme. However, the fact remains that Jamil Allie, who is equally culpable as Mr. Glick, and his brother, Mike, remain unpunished.

This case presents the maximum possible sentencing disparity. Defendant and counsel believe and assert that the Allies' crimes are widely known in the Logan area. And while defendant acknowledges the discretion vested in the U.S. Attorney, the vast disparity remains: 5 to 60 years prison per statute, and 87 to 108 months prison per the Sentencing Guidelines, compared to zero punishment for Jamil Allie and Mike Allie.

The disparity is immense, and it is unwarranted. The public likely will be mystified by the discrepancy, and the appearance of justice will not be well served. As for Mr. Glick, he respectfully asserts the disparity warrants the requested variance, and the minimum available sentence of five years.

**Conclusion:** The facts of this case, and federal sentencing law and policy, support defendant's request for a variance, and a sentence of five years prison.

Respectfully submitted:

JAMES GREGORY GLICK
By Counsel:

*/s/ Michael W. Carey*

Michael W. Carey, WVSB No. 625
S. Benjamin Bryant, WVSB No. 520
Carey, Scott Douglas & Kessler, PLLC
901 Chase Tower
707 Virginia Street, East
P.O. Box 913
Charleston, West Virginia 25323
(304)345-1234

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA,

v.  CASE NO. 2:13-cr-00225-01

JAMES GREGORY GLICK,

DEFENDANT.

## CERTIFICATE OF SERVICE

I, Michael W. Carey, counsel for Defendant, James Gregory Glick, do hereby certify that on this the 14th day of May, 2014, I have filed the foregoing "Defendant's Sentencing Memorandum And Request For Variance" using the Court's electronic filing system which will provide notification of such filing to the following:

Thomas Ryan, AUSA
Office of the United States Attorney
U.S. Department of Justice
United States Courthouse
300 Virginia Street East
P.O. Box 1713
Charleston, WV 25326-1713

James M. Cagle, Esquire
1018 Kanawha Boulevard, East
Suite 1200
Charleston, WV  25301

_/s/ Michael W. Carey_
Michael W. Carey, WVSB No. 635